UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CLANIAH HARTS,

                Plaintiff,

v.

NANCY A. BERRYHILL, Deputy Commissioner of Social Security for Operations,

                Defendant.

CASE NO. C17-1460-MAT

ORDER RE: SOCIAL SECURITY DISABILITY APPEAL

Plaintiff Claniah Harts proceeds through counsel in her appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied plaintiff's application for Supplemental Security Income (SSI) after a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, this matter is REMANDED for further proceedings.

**FACTS AND PROCEDURAL HISTORY**

Plaintiff was born on XXXX, 1970.[1] She completed some college-level courses and obtained a certificate, but has no past relevant work. (AR 38, 55-57.)

---

[1] Dates of birth must be redacted to the year. Fed. R. Civ. P. 5.2(a)(2) and LCR 5.2(a)(1).

ORDER
PAGE - 1

Plaintiff protectively filed an application for SSI in November 2013, alleging disability beginning June 19, 2007. (AR 244.) Her application was denied initially and on reconsideration.

On May 12, 2015, ALJ Cheri Filion held a hearing, taking testimony from plaintiff and a vocational expert (VE). (AR 46-95.) The ALJ also held a second hearing on October 20, 2015, taking testimony from plaintiff, a medical expert, and a VE. (AR 97-111.) On December 21, 2015, the ALJ issued a decision finding plaintiff not disabled since November 22, 2013, the protective filing date.[2] (AR 26-39.)

Plaintiff timely appealed. The Appeals Council denied plaintiff's request for review on July 24, 2017 (AR 1-6), making the ALJ's decision the final decision of the Commissioner. Plaintiff appealed this final decision of the Commissioner to this Court.

## **JURISDICTION**

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## **DISCUSSION**

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must be determined whether the claimant is gainfully employed. The ALJ found plaintiff had not engaged in substantial gainful activity since the alleged onset date. At step two, it must be determined whether a claimant suffers from a severe impairment. The ALJ found plaintiff's osteoarthritis, asthma, anxiety disorder, affective disorder, and somatoform disorder severe. He found other impairments either not severe or not medically determinable. Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found plaintiff's impairments did not meet or equal the criteria of a listed impairment.

---

[2] SSI is not payable prior to the month following the month of the application. 20 C.F.R. § 416.335.

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found plaintiff able to perform light work, with some additional limitations. Plaintiff can occasionally lift and carry twenty pounds and frequently lift and carry ten pounds; stand and/or walk and sit for six hours in an eight-hour workday; frequently crouch, kneel, or stoop and occasionally crawl and climb ramps and stairs; never climb ladders, ropes, or scaffolds; and must avoid concentrated exposure to extreme cold, extreme heat, vibrations, and hazards, and even moderate exposure to fumes, odors, dusts, gases and poor ventilation. Plaintiff can recall simple and detailed instructions and perform at least simple, repetitive tasks, and may benefit from additional time to adjust to workplace changes. Plaintiff had no past relevant work to consider at step four.

If a claimant demonstrates an inability to perform past relevant work, or has no past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy. With VE assistance, the ALJ found plaintiff capable of performing other jobs, such as work as a marker, hotel/motel housekeeper, and semiconductor dye loader.

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). *Accord Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015) ("We will set aside a denial of benefits only if the denial is unsupported by substantial evidence in the administrative record or is based on legal error.") Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v.*

*Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff argues the ALJ erred in rejecting her testimony, in not finding fibromyalgia a medically determinable impairment, in rejecting a physician's opinion, and at step five. She requests remand for further administrative proceedings. The Commissioner argues the ALJ's decision has the support of substantial evidence and should be affirmed.

## Fibromyalgia

The record contains a November 2009 diagnosis of fibromyalgia (FM) by Dr. Tara Perti. (AR 29 (citing AR 330-31).) Dr. Petri stated: "Given her diffuse tenderness on exam with 13/18 tender points, I believe Ms. Harts has fibromyalgia." (AR 331.)

The ALJ found the lack of specificity in Dr. Perti's diagnosis and examination notes undercut her conclusion, and pointed to the testimony of the medical expert, Dr. Lin Vu, that there was no supporting evidence of a FM diagnosis. (AR 29.) The ALJ described the criteria necessary for a FM diagnosis as set forth in Social Security Ruling (SSR) 12-2p, and noted Dr. Perti's failure to cite evidence excluding other causes. The ALJ also noted the absence of any other FM diagnoses in the record supported by objective findings since Dr. Perti's examination, and the fact plaintiff has never been referred to a rheumatologist for specialized treatment. She concluded FM was not a medically determinable impairment (MDI).

Plaintiff notes Dr. Perti's opinion pre-dated SSR 12-2p, and avers the ALJ should have re-contacted this physician instead of assuming the inadequacy of the opinion. She maintains it was unreasonable to expect a re-evaluation of her chronic FM, as properly diagnosed, accepted, and treated by other providers, and the absence of evidence suggesting a different cause or explanation

for her signs and symptoms. Plaintiff notes a February 2014 referral to a rheumatologist. (AR 430-31.) She denies the value of contrary medical opinions in the record, pointing to Dr. Vu's specialty in pulmonology and a lack of clarity in her opinion (AR 104 ("And the third impairment is fibromyalgia and allegation that I don't feel it's supporting evidence.")), the fact examining physician Dr. Peter Pfeiffer is a generalist and did not review any medical records, and that Dr. Robert Bernardez-Fu did not examine plaintiff. Plaintiff also points to the Ninth Circuit's decisions in *Contreras v. Astrue*, No. 09-15657, 2010 U.S. App. LEXIS 9242 at *2-4 (9th Cir. May 5, 2010), and *Revels v. Berryhill*, 874 F.3d 648, 658, 663-64 (9th Cir. 2017), as supporting the sufficiency of the evidence from Dr. Perti and undermining the contrary opinions.

SSR 12-2p sets forth the criteria for establishing the existence of a MDI of FM. An ALJ cannot rely upon a physician's diagnosis alone: "The evidence must document that the physician reviewed the person's medical history and conducted a physical exam." SSR 12-2p. The ALJ reviews the physician's treatment notes to determine if they are consistent with a FM diagnosis, the status of the claimant's symptoms over time, and the physician's assessment over time as to the claimant's physical strength and functional abilities. *Id*.

Beyond a diagnosis, a claimant must provide evidence satisfying one of two different sets of criteria – based on 1990 and 2010 criteria from the American College of Rheumatology (ACR) respectively – and the diagnosis must not be "inconsistent with other evidence in the person's case record." *Id*. To satisfy the first set of criteria, a claimant must have: (1) a history of widespread pain; that is, pain in all quadrants of the body (right and left sides, above and below waist) and axial skeletal pain (cervical spine, anterior chest, thoracic spine, or low back) that has persisted for at least 3 months; (2) at least eleven positive tender points on physical examination found bilaterally and above and below waist; and (3) evidence other disorders that could cause the

symptoms or signs were excluded. *Id*. For the second set of criteria, a claimant must have: (1) history of widespread pain (as above); (2) repeated manifestations of six or more FM symptoms, signs, or co-occurring conditions, especially fatigue, cognitive or memory problems, waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome; and (3) evidence other disorders that could cause those manifestations were excluded. *Id*.

In this case, given the absence of evidence other disorders were excluded, Dr. Perti's opinion did not satisfy either the more recent FM criteria or the ACR criteria in effect long before the adoption of SSR 12-2p. The evidence from Dr. Perti and elsewhere in the record is, moreover, not comparable to the case law cited by plaintiff. In one case, a rheumatologist first offered a FM diagnosis after a full history and physical examination, made subsequent findings of daily severe fatigue, depression, increase in migraines, and multiple tender points throughout the body and offered an opinion of disability, and, still later, observed tender points in a "'widespread distribution' satisfying the 'ACR criteria for fibromyalgia.'" *Contreras,* 2010 U.S. App. LEXIS 9242 at *2-4 (also finding the opinion of this specialist entitled to greater weight than the opinions of consultative and non-examining physicians). In the other case, the Ninth Circuit found the ALJ erred in assigning no weight to the opinion of a treating rheumatologist who provided detailed treatment notes and a letter describing a claimant's FM condition, findings, and treatment, documented pain in multiple areas of the body and eleven or more tender points in five out of eight appointments, prescribed numerous medications, and administered steroid injections. *Revels*, 874 F.3d at 658, 663-64.

Nor was the ALJ obligated to contact Dr. Perti. "An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir.

2001); *accord* 20 C.F.R. § 416.912(e)(1). Dr. Perti, in 2009, believed plaintiff had FM after finding tenderness in 13/18 tender points. (AR 331.) The ALJ could reasonably find the record as a whole adequate to make a determination as to whether plaintiff had a MDI of FM given Dr. Petri's failure to cite any evidence excluding other causes, the absence of any subsequent FM diagnoses supported by objective findings, and the contrary medical evidence of record, including, *inter alia*, Dr. Pfeiffer's August 2013 finding on examination that plaintiff's "trigger point sensitivities are indistinct and inconclusive." (AR 498.)

There is no evidence plaintiff pursued the February 2014 referral to a rheumatologist. The medical record containing the referral further reflects that, while she received medication for FM in the past, she had been "off medication for a while." (AR 430.) (*See also* AR 497 (Dr. Pfeiffer: "In 2008 she was given some kind of medication for [FM] but she doesn't remember the name.")) The mere existence of the referral does not undermine the substantial evidence support for the ALJ's step two determination. For this reason, and for the reasons stated above, plaintiff does not establish error in the consideration of FM.

Symptom Testimony

An ALJ must provide specific, clear, and convincing reasons to reject a claimant's subjective symptom testimony.[3] *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014) (citing *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v.*

---

[3] In SSR 16-3p, the Social Security Administration rescinded SSR 96-7p, eliminated the term "credibility" from its sub-regulatory policy, clarified that "subjective symptom evaluation is not an examination of an individual's character[,]" and indicated it would more "more closely follow [its] regulatory language regarding symptom evaluation." SSR 16-3p. However, this change is effective March 28, 2016 and not applicable to the December 2015 ALJ decision in this case. The Court also continues to cite to relevant case law utilizing the term credibility.

ORDER
PAGE - 7

*Chater*, 81 F.3d 821, 834 (9th Cir. 1996). The ALJ may consider a claimant's "reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains." *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

The ALJ found plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms not entirely credible. Portions of the ALJ's assessment withstand scrutiny, including the lack of supportive objective evidence, noncompliance with treatment recommendations and improvement with compliance, and evidence plaintiff was uncooperative with providers, did not put forth good effort on testing, and failed to show up for appointments. (AR 32-34.) *See, e.g.*, *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects."); and *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (unexplained or inadequately explained failure to seek or follow a prescribed course of treatment, and favorable response to treatment); *Thomas*, 278 F.3d at 959 (self-limiting behavior, failure to give maximum or consistent effort on examination, or efforts to impede accurate testing); *Morgan v. Comm'r of SSA*, 169 F.3d 595, 599-600 (9th Cir. 1999) (improvement with use of medication); 20 C.F.R. § 416.930 (a)-(b) ("If you do not follow the prescribed treatment without a good reason, we will not find you disabled or, if you are already receiving benefits, we will stop paying you benefits.") The ALJ also properly considered evidence of plaintiff's poor work history and work avoidance, *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996), and *Osenbrock v. Apfel*, 240 F.3d 1157, 1165-67 (9th Cir. 2001), and inconsistencies in plaintiff's reporting

regarding her use of substances, *Thomas*, 278 F.3d at 959; *Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999). (AR 35.) The Court, however, finds other portions of the ALJ's assessment problematic for the reasons set forth below.

An ALJ may consider inconsistency between a claimant's testimony and her reported activities. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). In this case, the ALJ's finding of inconsistency lacks the support of substantial evidence. There is no significant disparity between plaintiff's assertion she could not attend to or needed a lot of help with personal care (AR 274) and an observation she was "fairly dressed and groomed" (AR 510), or between her testimony she did very few household chores and tasks and got help from her daughter and roommate (AR 75-76) and her report some sixteen months earlier that she could cook and clean for herself "but lately it has been getting harder, my sister and my children help me do the things that I need done." (AR 555.) (*But see* AR 558 (described as "well groomed" in January 2014).) Nor did the ALJ reasonably construe inconsistency between plaintiff's testimony she did not engage in social activities and a report she once attended a barbecue and on another occasion planned to fly out of state to attend the funeral of her grandfather. (AR 34-35; AR 76-77, 80-81 (plaintiff also testified she went to church); AR 571.) Also, while finding plaintiff could advocate for herself when trying to find housing and use a computer to research her options, treatment notes show she did so with a considerable amount of assistance. (AR 35 (citing AR 597 ("CM and client searched the internet for housing. CM and client called several apartment complexes and housing units. CM called Porchlight for referrals.")); *see also* AR 571-604.)

An ALJ may, in some circumstances, consider evidence of a claimant's criminal history. *See Hardisty v. Astrue*, 592 F.3d 1072, 1079-80 (9th Cir. 2010) (ALJ's adverse credibility finding was substantially justified because all of the inferences upon which it rested, including inferences

regarding prior convictions, had substance in the record). The ALJ here stated plaintiff's criminal charges were noted as a possible barrier to finding housing, concluded they likely affected her ability to find employment, and stated that the "unwillingness of employers to hire someone with a criminal history is not an appropriate basis for a finding of disability." (AR 35 (citing 20 C.F.R. § 416.966(c)(3) (claimant will not be not found disabled if an inability to work is due to the hiring practices of employers)).) However, the evidence of criminal activity is not clear. Plaintiff testified she had no criminal convictions (AR 50), told a provider she had once been arrested for trespassing, but did not spend any time in jail (AR 508), and elsewhere reported either she or her adult daughter faced misdemeanor and felony charges (AR 586 ("She has a number of barriers to housing – adult daughter has evictions in 2006-2007; [misdemeanor] and felony charges – both in 2012.")) Given the lack of detail and clarity, the ALJ did not reasonably draw an inference as to an impact on plaintiff's ability to find employment.

Where the ALJ provides specific reasons supporting an assessment and substantial evidence supports the conclusion, an error in the assessment may be deemed harmless. *Carmickle v. Commissioner, Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008). The relevant inquiry "is not whether the ALJ would have made a different decision absent any error, . . . [but] whether the ALJ's decision remains legally valid, despite such error." *Id*. *See also Molina*, 674 F.3d at 1115 (ALJ's error may be deemed harmless where it is "'inconsequential to the ultimate nondisability determination.'") In this case, the Court concludes the errors in the assessment of plaintiff's symptom testimony undermine the substantial evidence support for the ALJ's conclusion and necessitate further consideration of her testimony on remand.[4]

---

[4] Plaintiff submitted records from an asthma-related hospitalization dated less than five months before her SSI application (*see* Dkt. 12), but not provided to the ALJ for review. (*See* AR 2 (Appeals Council decision: "The [ALJ] decided your case from November 22, 2013 through December 21, 2015. This additional evidence does not relate to the period at issue. Therefore, it does not affect the decision

Medical Opinion

Plaintiff avers error in the ALJ's failure to provide specific and legitimate reasons for rejecting the opinions of Dr. Siobhan Budwey (AR 507-11). *Lester*, 81 F.3d at 830. Dr. Budwey examined plaintiff in October 2013, and assigned a Global Assessment of Functioning (GAF) score of 21, defined in a prior version of the Diagnostic and Statistical Manual of Mental Disorders (DSM) as reflecting behavior "considerably influenced by delusions and hallucinations," "serious impairment in communication or judgment," or "inability to function in almost all areas." DSM-IV-TR at 34 (4th ed. 2000). Dr. Budwey also assessed plaintiff as markedly limited in a number of respects and severely limited in relation to performing activities within a schedule, attendance, and punctuality. (AR 509.)

The ALJ found the record, including Dr. Budwey's own findings, did not demonstrate limitations of the severity opined, that plaintiff showed some minor limitations during the exam, but generally performed within normal limits, and stated: "Were Dr. Budwey's opinion to be supported, one would have expected the claimant to have been hospitalized and that did not happen." (AR 37.) The ALJ found Dr. Budwey relied largely on plaintiff's self-report, which the ALJ did not find credible and forthcoming, and noted a January 2014 mental status examination (MSE) administered by treatment providers and finding no significant functional impairment (*see* AR 558-61). The ALJ concluded Dr. Budwey appeared to rely heavily on plaintiff's report she essentially spends all day in bed, which was inconsistent with her reported activities elsewhere in the record. Finding the opinions regarding limitations not representative of plaintiff's actual

---

about whether you were disabled beginning on or before December 21, 2015 [sic].")) *But see* 20 C.F.R. § 416.912(d)(2) (2015) ("Before we make a determination that you are not disabled, we will develop your complete medical history for at least the 12 months preceding the month in which you file your application[.]"), *as amended*, § 416.912(b)(1) (2017). Because this evidence is now available for the ALJ's review, it should be considered on remand.

ORDER
PAGE - 11

functioning, the ALJ gave them little weight.

An ALJ may reject a physician's opinion upon finding it inconsistent with the record, *Tommasetti*, 533 F.3d at 1041, or with the physician's own notes or observations, *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). An ALJ may also reject the opinion of a physician "if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible." *Tommasetti*, 533 F.3d at 1041 (quoting *Morgan*, 169 F.3d at 602).

The ALJ's assessment of Dr. Budwey's opinions finds some support in the record. The ALJ, for example, reasonably questioned the severity of the limitations and GAF opined given other evidence in the record and Dr. Budwey's own findings. (*See* AR 33-34 (treatment records failed to objectively establish the disabling mental health limitations alleged); AR 511 (Dr. Budwey found thought process and content, orientation, and perception within normal limits, a single error in both fund of knowledge and concentration testing, and fair insight and judgment).) Considered as such, the ALJ can be said to have reasonably inferred Dr. Budwey's at least partial reliance on plaintiff's self-reports.

However, the ALJ's errors in addressing plaintiff's symptom testimony potentially implicate her conclusion with regard to Dr. Budwey and any reliance on plaintiff's reporting. It can further be said that Dr. Budwey appeared to rely, to some extent, on her own findings and observations on examination. (*See* AR 508-11 (plaintiff presented as depressed and tired, completed inventories showing extremely severe depression and anxiety, and MSE included, in addition to that described above, observations of tired and depressed mood as evidenced by psychomotor retardation, a restricted range of affect (difficult to determine because wearing medical mask), and impaired memory and abstract judgment).) These factors undermine the substantial evidence support for the ALJ's assessment of Dr. Budwey's opinions. The ALJ should,

therefore, reassess this opinion evidence on remand.

### RFC and Step Five

Plaintiff avers error at step five given the ALJ's failure to account for her limitations, including, but not limited to, her use of a nebulizer at least four times a day. Because further consideration of plaintiff's symptom testimony and the evidence from Dr. Budwey could implicate other steps in the sequential analysis, the ALJ should also reconsider plaintiff's RFC at step four and the decision at step five. The ALJ should, in so doing, take the opportunity to further clarify any limitations associated with the use of a nebulizer at work and the impact of such use on any jobs identified at step five.

### **CONCLUSION**

For the reasons set forth above, this matter is REMANDED for further administrative proceedings.

DATED this 17th day of May, 2018.

Mary Alice Theiler
United States Magistrate Judge